51 Cal.3d 202 (1990)
793 P.2d 524
271 Cal. Rptr. 191
DANIEL G. KIMMEL et al., Plaintiffs, Cross-defendants and Respondents,
v.
MARGARET R. GOLAND, as Trustee, etc., et al., Defendants, Cross-complainants and Appellants; R. RICHARD FARNELL, Cross-defendant and Respondent.
Docket No. S007828.
Supreme Court of California.
July 12, 1990.
*204 COUNSEL
Timothy T. Tierney, Cappadona & Oldman and Lyle R. Mink for Defendants, Cross-complainants and Appellants.
Cotkin, Collins & Franscell, William D. Naeve, Sheryl A. Weinstein, Margaret Kathryn Maas and R. Richard Farnell, in pro. per., for Plaintiffs, Cross-defendants and Respondents.
Solish, Jordan & Wiener, Jonathan Solish and Douglas P. Bedard as Amici Curiae on behalf of Plaintiffs, Cross-defendants and Respondents.
*205 OPINION
ARABIAN, J. 

INTRODUCTION
In this case we are called upon to determine whether the privilege of Civil Code section 47, subdivision 2,[1] shields a person from liability for the unlawful recording, in anticipation of litigation, of confidential telephone conversations.
(1a) We conclude that the privilege of section 47(2) precludes recovery for tortiously inflicted injury resulting from publications or broadcasts made during the course of judicial and quasi-judicial proceedings, but does not bar recovery for injuries from tortious conduct regardless of the purpose for which such conduct is undertaken.[2] Our holding is limited to the narrow facts before us involving noncommunicative acts  the illegal recording of confidential telephone conversations  for the purpose of gathering evidence to be used in future litigation. Because the conduct at issue here was not privileged under section 47(2), the judgment of the Court of Appeal is affirmed and the case is remanded for trial.

I. BACKGROUND
(2) In reviewing an order granting a motion for judgment on the pleadings, we accept as true all material allegations in the complaint. (Sullivan v. County of Los Angeles (1974) 12 Cal.3d 710, 714-715, fn. 3 [117 Cal. Rptr. 241, 527 P.2d 865]; April Enterprises v. KTTV (1983) 147 Cal. App.3d 805, 815 [195 Cal. Rptr. 421]; Baillargeon v. Department of Water & Power (1977) 69 Cal. App.3d 670, 675 [138 Cal. Rptr. 338]; Stencel Aero Engineering v. Superior Court (1976) 56 Cal. App.3d 978, 987 [128 Cal. Rptr. 691].)
This appeal arises out of a cross-complaint in an underlying action involving the sale of mobilehomes. Plaintiffs Diane Vollrath and Daniel G. and Elizabeth Kimmel were residents of the Country Club Mobile Manor, a mobilehome park located in Santa Ana, California. Vollrath and the Kimmels (plaintiffs) were each living in mobilehomes that were less than 20 feet wide and, as of January 1, 1983, were more than 17 years old.
*206 In late 1982, plaintiffs decided to sell their mobilehomes. At that time, section 798.73 provided in relevant part that, "in the event of a sale to a third party, in order to upgrade the quality of the park, the management may require that a mobilehome be removed from the park" if, among other things, it was more than 17 years old and less than 20 feet wide. (§ 798.73, subd. (c).) Effective January 1, 1983, however, section 798.73 was amended to provide that management could not require removal of a mobilehome unless, in addition to meeting the age and size criteria, the mobilehome did not comply with the construction and safety standards of the Health and Safety Code.[3] This amendment was of particular importance to owners of older mobilehomes because mobilehomes sold in place have significantly greater market value than mobilehomes which must be removed upon sale.
In 1983, relying on the amendment and believing their mobilehomes complied with all applicable state laws, plaintiffs offered their homes for sale. They allege, however, that George Brooks and Vaughn Drage, management representatives of the Country Club Mobile Manor (park management), informed them the mobilehomes could not be sold in place unless certain repairs were made. Plaintiffs assert that none of the demanded repairs or changes were required by state law. They further allege that park management was trying to force them to remove the old homes in an effort to upgrade the park and raise rents in violation of section 798.73, subdivision (c).
In the belief that park management would subsequently deny statements regarding "required" repairs and modifications, and in anticipation of suing park management, plaintiffs undertook the tape recording of future conversations with park management without their consent or knowledge. Plaintiff *207 Vollrath recorded her conversations with Brooks and Drage; plaintiff Daniel Kimmel recorded his conversation with Drage; and Annette Brown, Daniel Kimmel's sister, recorded her conversation with Drage in which she pretended to be a potential buyer for the Kimmels' mobilehome. The tape recordings were subsequently transcribed by plaintiffs' attorney, R. Richard Farnell.
After making the recordings, plaintiffs filed suit against park management for interference with prospective economic advantage, intentional infliction of emotional distress, bad faith, and unlawful business practices. The suit alleged that park management refused to permit the owners to sell their mobilehomes in place in violation of section 798.73. Park management answered by general denial.
While the action was pending, park management learned of the existence of plaintiffs' tape recordings and filed a cross-complaint alleging violation of Penal Code section 632, part of California's Invasion of Privacy Act (Pen. Code, § 630 et seq.) (privacy act).[4] Park management sought damages as provided by Penal Code section 637.2 against plaintiffs and Attorney Farnell.[5] As alleged in the cross-complaint, between January and April of 1983, plaintiffs taped confidential telephone conversations without park management's consent or knowledge. During this period, plaintiffs delivered the tapes to Farnell on five separate occasions. Although Farnell was not present during the actual recording of the conversations, he transcribed the tapes and "furthered the unlawful agreement [to record the confidential *208 conversations] by aiding, abetting, counseling, advising and encouraging" plaintiffs in their recording of the calls.[6]
Prior to trial, plaintiffs and Farnell[7] moved for judgment on the pleadings as to the cross-complaint, arguing that, because the tapes were made for the purpose of gathering evidence in anticipation of litigation, their conduct (i.e. recording and transcribing the conversations) was privileged under section 47(2). The trial court granted plaintiffs' motion for judgment on the pleadings on the ground that the litigation privilege of section 47(2) rendered them immune from liability for the alleged violation of the privacy act. The case proceeded to trial, the tapes were admitted into evidence over park management's objections, and the jury awarded plaintiffs $75,000 in actual damages and $495,000 in punitive damages.
Park management appealed the dismissal of the cross-complaint and the judgment awarding damages to plaintiffs. The Court of Appeal consolidated the appeals and reversed both judgments, concluding that the litigation privilege of section 47(2) did not bar park management's cause of action. The court reasoned: "Recordings made in violation of the Penal Code could hardly be said to be in furtherance of the litigation or to promote the interest of justice."
We granted plaintiffs' petition for review in part because of the Court of Appeal's consideration of the "interest of justice" test that we recently disapproved in Silberg v. Anderson, supra, 50 Cal.3d 205, and in part to clarify the proper scope of the litigation privilege.

II. DISCUSSION

A. The Litigation Privilege  Section 47(2)

The central issue we address is whether the litigation privilege of section 47(2) applies to plaintiffs' conduct. (3) Our analysis starts from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. (People v. Woodhead (1987) 43 Cal.3d 1002, 1007 [239 Cal. Rptr. 656, 741 P.2d 154]; People v. Overstreet (1986) 42 Cal.3d 891, 895 [231 Cal. Rptr. 213, 726 P.2d 1288].) In determining intent, *209 we look first to the language of the statute, giving effect to its "plain meaning." (Tiernan v. Trustees of Cal. State University & Colleges (1982) 33 Cal.3d 211, 218-219 [188 Cal. Rptr. 115, 655 P.2d 317].)
(4) On its face, section 47(2) applies to all "publication[s] or broadcast[s]" made in the course of a "judicial proceeding." Although the litigation privilege was originally limited to shielding litigants, attorneys and witnesses from liability for defamation (see Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc. (1986) 42 Cal.3d 1157, 1163 [232 Cal. Rptr. 567, 728 P.2d 1202]), it has been interpreted to apply to virtually all torts except malicious prosecution. (Albertson v. Raboff (1956) 46 Cal.2d 375, 382 [295 P.2d 405]; Kilgore v. Younger (1982) 30 Cal.3d 770, 778 [180 Cal. Rptr. 657, 640 P.2d 793]; Block v. Sacramento Clinical Labs, Inc. (1982) 131 Cal. App.3d 386, 390 [182 Cal. Rptr. 438]; Pettitt v. Levy (1972) 28 Cal. App.3d 484, 489 [104 Cal. Rptr. 650].) (5) This includes the tort of invasion of privacy. (Ribas v. Clark (1985) 38 Cal.3d 355, 364 [212 Cal. Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417]; see Kilgore v. Younger, supra, 30 Cal.3d 770, 782.)
(6) We recently held in Silberg v. Anderson, supra, 50 Cal.3d at page 212, that the privilege of section 47(2) extends to any communication: "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." (See, e.g., Green v. Uccelli (1989) 207 Cal. App.3d 1112, 1124 [255 Cal. Rptr. 315]; Carney v. Rotkin, Schmerin & McIntyre (1988) 206 Cal. App.3d 1513, 1521 [254 Cal. Rptr. 478]; Walsh v. Bronson (1988) 200 Cal. App.3d 259, 269 [245 Cal. Rptr. 888]; Financial Corp. of America v. Wilburn (1987) 189 Cal. App.3d 764, 772-773 [234 Cal. Rptr. 653]; Chen v. Fleming (1983) 147 Cal. App.3d 36, 41 [194 Cal. Rptr. 913]; Hagendorf v. Brown (9th Cir.1983) 699 F.2d 478, 480.)
(1b) Here, park management alleges that it suffered injury from the taping of confidential telephone conversations, not from any "publication" or "broadcast" of the information contained in these conversations. Thus, the litigation privilege is plainly not applicable. "Unless [plaintiffs] can demonstrate that the natural and customary import of the statute's language is either `repugnant to the general purview of the act,' or for some other compelling reason, should be disregarded, this court must give effect to the statute's `plain meaning.'" (Tiernan v. Trustees of Cal. State University & Colleges, supra, 33 Cal.3d at pp. 218-219, citing 2A Sutherland, Statutory Construction (4th ed. 1973) § 46.01, p. 49.)
*210 Plaintiffs rely on Ribas v. Clark, supra, 38 Cal.3d 355, for the proposition that section 47(2) immunizes them from liability. In Ribas, the plaintiff and his wife, who was not represented by counsel, began divorce proceedings that ultimately resulted in a court-approved property settlement agreement. Subsequently, the wife learned from an attorney about the adverse tax consequences of the settlement. She then asked her attorney to listen on an extension telephone while she spoke to her husband. On the basis of information obtained during the telephone conversation, the wife filed an action to set aside the dissolution decree, alleging that her husband had procured the settlement agreement by fraud.
At the arbitration hearing, the wife's attorney testified that, while listening to the telephone call without the husband's knowledge or consent, she heard the husband state that he had prevented his wife from obtaining counsel during the dissolution proceedings. Following the hearing, the husband brought an action against the attorney for violation of Penal Code sections 631, subdivision (a)[8] and 637.2 (see fn. 5, ante), as well as common law invasion of privacy, intentional infliction of emotional distress and outrage. The trial court sustained the attorney's demurrer, without leave to amend, as to all causes of action on the ground that the attorney was immune from liability pursuant to section 47(2).
On review, we drew a distinction between eavesdropping, in violation of the privacy act, and testifying during an arbitration hearing. As to the act of eavesdropping, we concluded that Penal Code section 637.2 "authorizes civil awards of $3,000 for each violation of the Privacy Act ... [and b]ecause the right to such an award accrues at the moment of the violation, it is not barred by the judicial privilege [of section 47(2)]." (Ribas v. Clark, supra, 38 Cal.3d at p. 365.) We also determined that the purpose of section 47(2), to "afford[] free access to the courts and facilitat[e] the crucial functions of the finder of fact" (38 Cal.3d at pp. 364-365), necessitated that "to the extent plaintiff allege[d] in his complaint that he suffered actual injury solely as a result of [the attorney's] testimony ... his cause of action under Penal Code section 637.2 must fail." (Id. at p. 365.) Accordingly, we held that the husband could sue the attorney for the statutory civil award authorized by Penal Code section 637.2, but that his action was barred insofar as it was based on "his common law right to privacy, because his alleged injury stems solely from defendant's testimony at the arbitration proceeding. [Citations.]" (38 Cal.3d at p. 364, italics added.)
*211 (1c) This case and Ribas v. Clark, supra, 38 Cal.3d 355, share several common features. Both cases involve alleged violations of the privacy act in which the offending party claimed immunity under the litigation privilege. In both cases, moreover, the acts upon which liability was premised were committed in anticipation of litigation but prior to the commencement of any actual judicial proceeding. These factual congruities, and the sound reasoning of Ribas, compel the conclusion that park management's claim for damages under Penal Code section 637.2 is not barred by the litigation privilege of section 47(2).
Implicit in the Ribas decision was the distinction between injury allegedly arising from communicative acts, i.e., the attorney's testimony, and injury resulting from noncommunicative conduct, i.e., the invasion of privacy resulting from the attorney's eavesdropping. This distinction has traditionally served as a threshold issue in determining the applicability of section 47(2). For example, in Westlake Community Hospital v. Superior Court (1976) 17 Cal.3d 465 [131 Cal. Rptr. 90, 551 P.2d 410], we were required to determine whether a hospital was immune under section 47(2) from liability for the termination of a physician's staff privileges. We noted that the doctor's "claim [was] not that her injury ha[d] been occasioned simply by [the hospital's] malicious statements at the proceedings, but rather that she ha[d] been injured by the malicious actions of the hospital ... in revoking her staff privileges.... Although ... [section 47(2)] has on occasion been applied in contexts other than a defamation action [citation], its absolute privilege has always attached only to statements or publications made in connection with the applicable proceeding." (17 Cal.3d at p. 482, original italics; see Cuenca v. Safeway San Francisco Employees Fed. Credit Union (1986) 180 Cal. App.3d 985, 994 [225 Cal. Rptr. 852]; Rosenfeld, Meyer & Susman v. Cohen (1983) 146 Cal. App.3d 200, 234 [194 Cal. Rptr. 180]; cf. White v. Western Title Ins. Co. (1985) 40 Cal.3d 870, 888 [221 Cal. Rptr. 509, 710 P.2d 309].)
We note that plaintiffs have not cited a single case in which section 47(2) has been held to bar suit for personal injuries arising from noncommunicative conduct that occurred during a judicial proceeding. On the contrary, a review of the myriad cases that have applied section 47(2) to shield defendants from liability demonstrates that, without exception, the privilege has applied only to torts arising from statements or publications. (See, e.g., Ribas v. Clark, supra, 38 Cal.3d 355; Carden v. Getzoff (1987) 190 Cal. App.3d 907 [235 Cal. Rptr. 698]; Steiner v. Eikerling (1986) 181 Cal. App.3d 639 [226 Cal. Rptr. 694]; Rosenthal v. Irell & Manella (1982) 135 Cal. App.3d 121 [185 Cal. Rptr. 92]; Asia Investment v. Borowski (1982) 133 Cal. App.3d 832 [184 Cal. Rptr. 317, 30 A.L.R.4th 561]; Portman v. George McDonald Law Corp. (1979) 99 Cal. App.3d 988 [160 Cal. Rptr. *212 505]; Umansky v. Urquhart (1978) 84 Cal. App.3d 368 [148 Cal. Rptr. 547]; Lerette v. Dean Witter Organization, Inc. (1976) 60 Cal. App.3d 573 [131 Cal. Rptr. 592]; Pettitt v. Levy, supra, 28 Cal. App.3d 484; Kachig v. Boothe (1972) 22 Cal. App.3d 626 [99 Cal. Rptr. 393]; Agostini v. Strycula (1965) 231 Cal. App.2d 804 [42 Cal. Rptr. 314].)
Here, park management seeks statutory damages under Penal Code section 637.2 not for injuries arising from the broadcast and publication of private conversations, but from the recording of them. Moreover, since park management's right to a statutory remedy accrued at the moment of the violation, plaintiffs' contention that the telephone conversations were made in anticipation of litigation is simply irrelevant. Penal Code section 637.2 was intended "to provide those who suffer an infringement of this aspect of their personal liberty a means of vindicating their right." (Ribas v. Clark, supra, 38 Cal.3d at p. 365.)
Finally, we note that the result urged by plaintiffs, an extension of section 47(2) to unlawful conduct undertaken to obtain evidence in anticipation of litigation, would lead to unacceptable consequences. Suppose, a prospective defendant kept important documents at home. If a prospective plaintiff, in anticipation of litigation, burglarized defendant's premises in order to obtain evidence, plaintiffs here would apparently apply the privilege to protect the criminal conduct. Such an extension of section 47(2) is untenable. The instant case and the example are comparable in that both involve violation of a penal statute, and in both cases the offending party seeks immunity from civil liability. In both, the claim must fail.
In sum, we hold that park management's cross-complaint for damages for violation of Penal Code section 632 is not barred by the litigation privilege of section 47(2).

B. The Applicability of Section 47(2) to Attorney Farnell

(7) Farnell argues that lawyers should enjoy a special immunity from liability for violation of the privacy act or other illegal or tortious conduct. He argues that the broadest possible application of section 47(2) to attorneys' misconduct is necessary to avoid the conflict of interest that may result when an attorney is forced to defend against a cause as a codefendant with his clients. We are not persuaded. Nothing in the text of section 47(2) suggests the existence of such an "attorney exception."
He argues, further, that if an attorney is required to defend himself under such circumstances, opposing counsel will inevitably file complaints, however frivolous, to force the attorney either to reveal work product, violate *213 the attorney-client privilege or obtain substitute counsel. These derivative actions, he urges, will delay bringing the action to trial and prejudice the attorney's clients. Again, we are not persuaded by these claimed perils.
First, Farnell has not explained how, if at all, he has been or will be forced to reveal his work product. Second, the attorney-client privilege does not apply "if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime." (Evid. Code, § 956.) Thus, Farnell cannot assert the attorney-client privilege to defend against charges that he violated the privacy act, a criminal offense punishable by fine or imprisonment, or both. (Pen. Code, § 632, subd. (a).)[9]
Indeed, the only case that Farnell cites to support his claim that section 47(2) should apply to the illegal conduct of an attorney, makes no mention of section 47(2) whatsoever. In Commercial Standard Title Co. v. Superior Court (1979) 92 Cal. App.3d 934 [155 Cal. Rptr. 393], the court held that a defendant title company could not cross-complain against the plaintiff's attorney for comparative indemnity based on malpractice where the attorney was not a true joint tortfeasor, because the attorney's liability, if any, would proceed from a totally different source than that of his client's opponent, the cross-complainant. Even if applicable by analogy to this case, however, Farnell's alleged liability proceeds directly from the same course of conduct as that of his clients. Accordingly, under Commercial Standard Title Co., he could be subject to liability on a cross-complaint.
Finally, Farnell urges that attorneys will be chilled in their advocacy of their clients' causes if such immunity from suit is not provided. To be sure, the threat of liability in a civil action based on violation of the privacy act or other illegal conduct may cool the zealousness of an attorney's efforts in the advance of his or her client's cause. We conclude, however, that such forbearance is, in fact, healthy to the extent it inhibits an attorney from assisting clients in the commission of crimes.[10]

*214 III. CONCLUSION
The profession of the law possesses extraordinary powers. Lawyers can make the arrogant humble and the weak strong. In control of the course of litigation and armed with the knowledge of right and wrong, they are most able to abjure illegal or tortious conduct; it is their duty to do so. As occupants of a high public trust and officers of the court, they are expected to conform their behavior in legal affairs to a higher standard of rectitude and spirit of obedience than those who are willing to endure the dust of transgression.
Guided by oath, duty and obligation, the lawyer's path avoids the vices from which the virtuous abstain. Thus, it ill suits the profession to seek immunity for injuries inflicted while engaged in legal warfare under the protective tarpaulin of the privilege for "judicial proceedings."
We conclude, therefore, that Attorney Farnell is not immune under section 47(2) from liability for his alleged conduct in aiding and abetting a violation of the privacy act.
The judgment of the Court of Appeal is affirmed and the matter is remanded for trial.
Lucas, C.J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., and Kennard, J., concurred.
NOTES
[1] All further statutory references are to the Civil Code unless otherwise indicated. For convenience, we will refer to section 47, subdivision 2, as section 47(2).

Section 47(2) provides in relevant part: "A privileged publication or broadcast is one made ... [¶] 2. In any ... (2) judicial proceeding...."
[2] The aim of the law is not to punish sins, but to prevent certain external results. (Commonwealth v. Kennedy (1897) 170 Mass. 18, 20 [48 N.E. 770] (Holmes, J.).)
[3] As amended in 1982, section 798.73 provides in relevant part: "The management shall not require the removal of a mobilehome from the park in the event of its sale to a third party during the term of the homeowner's rental agreement. However, in the event of a sale to a third party, in order to upgrade the quality of the park, the management may require that a mobilehome be removed from the park where: ... [¶] (c) The mobilehome is more than 17 years old, ... and is less than 20 feet wide and the mobilehome does not comply with the construction and safety standards under Sections 18550, 18552, and 18605 of the Health and Safety Code, and the regulations established thereunder."

Health and Safety Code section 18550 proscribes occupancy of mobilehomes that: do not conform to fuel, gas, electricity or sewage connection regulations (subd. (a)); are permanently attached with foundations not earthquake resistant (subd. (b)); do not conform to registration requirements (subd. (c)); are in an unsafe or unsanitary condition (subd. (d)); or are structurally unsound and do not protect occupants against the elements (subd. (e)).
Health and Safety Code section 18552 requires the Department of Housing and Community Development (department) to promulgate regulations for mobilehome accessory buildings and structures, and authorizes the enforcement of such regulations by the appropriate enforcement agency.
Health and Safety Code section 18605 requires the department to adopt regulations governing the use and occupancy of mobilehomes.
[4] Penal Code section 632 provides in relevant part: "(a) Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any ... recording device, ... records the confidential communication, whe[n] the communication is carried on among such parties ... by means of a ... telephone ... shall be punished by a fine ... or imprisonment.... [¶] [¶] (c) The term `confidential communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any... [official] proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded. [¶] (d) Except as proof in an action or prosecution for violation of this section, no evidence obtained as a result of ... recording a confidential communication in violation of this section shall be admissible in any judicial ... proceeding."
[5] Penal Code section 637.2 provides: "(a) Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: [¶] (1) Three thousand dollars ($3,000). [¶] (2) Three times the amount of actual damages, if any, sustained by the plaintiff. [¶] (b) Any person may ... bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a). [¶] (c) It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."
[6] As previously noted, our holding that the litigation privilege does not apply is limited to the injury resulting from plaintiffs' and Farnell's conduct. To the extent the complaint rests on Farnell's alleged communicative acts of "counseling" and "advising" his clients, the privilege is clearly operative. (See Silberg v. Anderson (1990) 50 Cal.3d 205 [266 Cal. Rptr. 638, 786 P.2d 365].)
[7] For convenience, plaintiffs and Farnell will be referred to jointly as "plaintiffs" unless otherwise indicated.
[8] Penal Code section 631, subdivision (a) prohibits "[a]ny person ... [from] willfully and without the consent of all parties to the communication ... attempt[ing] ... to learn the contents ... of any ... communication while the same is in transit or passing over any ... line ... or is being sent from, or received at any place within this state...."
[9] Although the cross-complaint alleges that the cross-defendants, Farnell among them, formed an agreement to violate the privacy act, the question of an attorney's liability for civil conspiracy was not raised by Farnell in this appeal or discussed in the Court of Appeal opinion. Accordingly, the issue is not addressed further.

The Court of Appeal determined that the cross-complaint pleaded facts sufficient to render Farnell liable as a principal (Pen. Code, § 31) in the commission of the crime of violating the privacy act. It remains to be seen whether the evidence at trial will support a finding that Farnell aided and abetted plaintiffs' alleged illegal tape recording. We note, however, that the privacy act has been held to provide civil damages only against "the person who committed the violation." (Warden v. Kahn (1979) 99 Cal. App.3d 805, 815 [160 Cal. Rptr. 471].)
[10] We hasten to note that we are holding only that an attorney's conduct is not privileged under section 47(2). Our holding should not be construed to undermine the substantial body of law that narrowly limits the right to sue an attorney for malicious prosecution (see, e.g., Sheldon Appel Co. v. Albert & Oliker (1989) 47 Cal.3d 863, 883 [254 Cal. Rptr. 336, 765 P.2d 498]) or "negligent advice." (Goodman v. Kennedy (1976) 18 Cal.3d 335, 344 [134 Cal. Rptr. 375, 556 P.2d 737].)