Filed 9/14/15   Lovell v. Head CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARY LOUISE LOVELL, | |
| Petitioner and Respondent, | G050642 |
| v. | (Super. Ct. No. 30-2014-00727446) |
| ANNA HEAD, | O P I N I O N |
| Respondent and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Kim R. Hubbard, Judge.  Affirmed.

Bunt & Shaver and David N. Shaver for Respondent and Appellant.

Law Offices of Cheryl L. Walsh and Cheryl L. Walsh for Petitioner and Respondent.

\*          \*          \*

Anna Head appeals from the court's issuance of an elder abuse protective order restraining her from abusing, contacting, or going near her mother, petitioner Mary Louise Lovell.[1] We affirm the order.

FACTS

I. *Petitioner's Case*

A. *Lovell's Testimony*

On July 2, 2014, Lovell was 76 years old and had been a resident of the Emeritus assisted living facility for about one year. She enjoyed living at Emeritus and had friends there.

At the hearing on her petition for a protective order, Lovell testified she wanted a restraining order to keep her eldest daughter Anna, and Anna's husband Eric, away from her, and that it was Lovell's own idea to get a restraining order against them. Lovell felt uncomfortable about their visits, believing they did not come on her behalf and "had a different agenda." Also, they showed up without notice and at inconvenient times, such as at dinner time. As a result, Lovell had told them she did not want to see them.

---

[1] For convenience and to avoid confusion, we refer to Anna Head and her husband Eric Head by their first names. We mean no disrespect.

The order is appealable under Code of Civil Procedure section 904.1, subdivision (a)(6). The order allowed Anna to contact and be within 100 yards of Lovell for purposes of a conservatorship case.

The order expired on July 2, 2015. We take judicial notice of the court's July 2, 2015 order extending the restraining order for four more years. (Evid. Code, § 452, subd. (d).) Accordingly, Anna's appeal is not moot.

Two months earlier, in May, Anna and Eric had come to Emeritus and had spoken loudly in the dining room.  Lovell was having dinner with her friends.  Eventually, Lovell told Anna and Eric, "I'm going to have to leave because I don't want to be here and create a scene."  Both Anna and Eric "were speaking too loud," but mostly Lovell heard Anna.  People had started turning in Lovell's direction and were listening to them.  "Chuck, . . . the head of Emeritus," came to the table while Anna and Eric were there.  Lovell left the dining room area.  She felt embarrassed and upset.  She wrote in her notes that Anna had "bullied and harassed" her.

Lovell did not want Anna or Eric to come back and visit her.  She does not trust them.  Lovell testified she understood that if the court issued a restraining order, Anna and Eric would not be able to visit her for at least three years.  She testified this was what she wanted and that she had reached this conclusion on her own.

On cross-examination, Lovell testified she had four children, including Mari Hopps and Anna.  Lovell did not trust Anna and Eric because at one time they had taken care of Lovell's finances and "did some things [she] was not too happy with," such as deciding to sell a house Lovell had inherited from her parents.


B. *Chuck Eusey's Testimony*

Chuck Eusey is the executive director of Emeritus.  He knows all the residents by name and interacts with them many times throughout the day.  He described Lovell as a very high functioning resident who is very independent and friendly.

On the date of the incident, Eusey was in another part of the building when the concierge "hollered" at him, "You need to get in the dining room right away, there's a disturbance going on.  You need to get there right now."  When he arrived in the dining room, Eusey saw Lovell sitting with her friends, Dave and Lita Kalil, at a different table from where Lovell normally sat.  The Kalils were being very protective of Lovell.  Anna and Eric were standing at the table, "arguing . . . and causing a commotion in the dining

3

room." They appeared to be verbally attacking Lovell. Eusey asked Lovell if she would like Anna and Eric to stay or leave. Lovell said, "I'd like them to leave." Lovell appeared to be distressed, upset, and embarrassed.

Eusey asked Anna and Eric to leave. "There was a little delay . . . ." Eusey had to ask Eric "a couple of times. They did eventually leave." Eusey accompanied them out of the dining room. Anna and Eric said "they would be back, would continue to come back."

## II. *Defense Case*

### A. *Anna's Testimony*

Lovell was diagnosed with a brain tumor in June 2012. Prior to chemotherapy, Lovell was decisive, logical, and outgoing. Afterwards, she was fearful at times, "weepy, depressed," and somewhat anxious.

In August 2013, Anna received a letter threatening her with an elder abuse temporary restraining order. In December 2013, when Anna visited Lovell at Emeritus, Lovell said she did not know that a letter had been sent to Anna. In an April 16, 2014 deposition, Lovell testified she "had no issue [with] seeing [Anna] or any of her children." Thereafter, Anna and Eric had some visits with Lovell, including on Mother's Day.

On May 28, 2014, Anna and Eric visited Lovell and found her at her regular dining table. Anna kneeled next to Lovell's chair and said, "Hi." Lovell said, "Hello, how are you?" Lita Kalil was seated at another table and waved at Lovell. Lovell got up and went to talk to Lita Kalil.

After close to five minutes, Anna went over to say goodbye to Lovell. Lita Kalil accused Anna of trying to make Lovell "a ward of the state," and said Anna could see her mother when she dropped "the lawsuit." Lita Kahil said Anna should stop trying to move her mother out of Emeritus because all of Lovell's friends knew "what is going on here." Lita Kalil said she and her husband would be "at court in October." Eric came to the table. Dave Kalil said, "It's very important for elderly people to be independent."

Lovell said, "I don't want to see you now."

Eusey came to the table. Anna and Eric went out into the hallway and asked Eusey whether there were any documents that prohibited their visits with Lovell. Eric said they would come back. Eventually Anna and Eric left the building.

On cross-examination, when asked if Lovell opposes "the conservatorship," Anna testified she and Lovell "have not shared opinions about the conservatorship at all." Anna's counsel stipulated that Lovell contests the conservatorship.

### B. *Eric's Testimony*

After Lovell told Anna she did not want to see her now, Lovell turned to Eric and said, "I do not want to see you either."

## III. *The Court's Ruling*

The court found Lovell "was very clear" that she did not want Anna or Eric to visit her. The court found Eusey was credible. The court issued a restraining order for a one-year period, finding that a five-year period of restraint was not justified. The court found Lovell's peace had been disturbed and therefore Anna had perpetrated elder abuse against her.

DISCUSSION

The sole issue on appeal is whether substantial evidence supports the court's finding Anna committed an act of elder abuse against Lovell.

Under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) (the Act), an elder who has suffered abuse may seek a protective order.[2] (§ 15657.03, subd. (a)(1).)  Under section 15657.03, subdivision (c), a court may issue a restraining order to prevent a recurrence of abuse, if a declaration shows, to the court's satisfaction, "reasonable proof of a past act or acts of abuse of the petitioning elder . . . ."

The Act contains statutory definitions which govern its construction. (§ 15610.)  Section 15610.07 defines "[a]buse of an elder" to include "mental suffering." (*Id*., subd. (a).)  "'Mental suffering' means fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats, harassment, or by deceptive acts performed or false or misleading statements made with malicious intent to agitate, confuse, frighten, or cause severe depression or serious emotional distress of the elder . . . ."  (§ 15610.53.)

"We review the issuance of a protective order under the [Act] for abuse of discretion, and we review the factual findings necessary to support the protective order for substantial evidence."  (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 135.)  We give the prevailing party the benefit of all reasonable inferences.  (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.)

---

[2]     All statutory references are to the Welfare and Institutions Code unless otherwise stated.

The court did not abuse its discretion by issuing the protective order against Anna because substantial evidence showed she committed elder abuse against Lovell. Anna and her husband verbally attacked Lovell, so loudly that it caused a "commotion" in the dining room. The incident took place in Lovell's residence and in front of her friends and coresidents. Anna bullied and harassed Lovell and made Lovell feel distressed, embarrassed, and upset. This was substantial evidence that Anna's treatment of Lovell that day caused Lovell to suffer mental suffering in the form of agitation and serious emotional distress brought about by intimidating behavior and harassment. No more is required under the plain meaning of the Act. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 208-209.)

Anna argues the evidence does not show her conduct caused Lovell to suffer "'serious' emotional distress." She acknowledges the Act does not define "serious emotional distress," but raises in her reply brief the argument we should turn for guidance to the law governing the tort of intentional infliction of emotional distress. We do not address arguments raised in an appellant's reply brief. (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1295.) Furthermore, under section 15610.53, agitation, standing alone, is a form of serious emotional distress.

Anna further argues the court found no pattern or history of abuse. But section 15657.03, subdivision (c), authorizes the court to issue a restraining order based on "reasonable proof of a past act or acts of abuse of the petitioning elder . . . ." Thus, a single instance of elder abuse suffices.

Finally, Anna correctly notes that the Act's definition of elder "abuse" does not include disturbing the peace of the elder.[3] But we review the trial court's decision, not its reasoning. (*People v. Zapien* (1993) 4 Cal.4th 929, 976; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, §§ 346–348, pp. 397-400.)

---

[3] Disturbing the peace is a form of *domestic violence* "abuse." (Fam. Code, §§ 6203, subd. (a)(4), 6320, subd. (a).)

DISPOSITION

The order is affirmed.  Lovell is entitled to recover her costs on appeal.


IKOLA, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.