[No. B213636. Second Dist., Div. Seven. Apr. 28, 2010.]

FREDERICK T. SCALZO et al., Plaintiffs and Appellants, v. WILLIAM E. BAKER, JR., et al., Defendants and Respondents.

[No. B216455. Second Dist., Div. Seven. Apr. 28, 2010.]

FREDERICK T. SCALZO et al., Plaintiffs and Appellants, v. MARTIN R. SCALZO et al., Defendants and Respondents.

Counsel

Newmeyer and Dillion, Charles S. Krolikowski, Uliana A. Kozeychuk and Michael Studenka for Plaintiffs and Appellants.

Baker & Baker, William E. Baker, Jr., and Robert N. Tan for Defendants and Respondents.

Opinion

ZELON, J.—

## SUMMARY

These appeals are from the trial court's grant of two special motions to strike. We affirm as to respondents Baker, Baker & Baker, Shomaker, and Haynie & Company; we reverse as to Martin R. Scalzo.

## FACTUAL AND PROCEDURAL SYNOPSIS

In July 2008, Frederick T. Scalzo and Donna M. Ostermiller filed a complaint against Martin R. Scalzo, Martin J. (Marty) Scalzo; William E. Baker, Jr. (Martin's attorney); Baker & Baker (the law firm representing Martin); David Shomaker (a certified public accountant working for Martin "in connection with a different litigation"); and Haynie & Company (the accounting firm where Shomaker was employed), alleging causes of action relating to Martin's[1] successful and unsuccessful efforts to obtain Frederick and Donna Ostermiller's American Express credit card statements and his "disseminat[ion]" of these statements to additional persons, including his attorneys, accountants, family members and other unknown persons, causing damage to their credit and identity theft.[2] (We include Donna in our further references to Frederick unless otherwise indicated.)

According to the complaint, on December 4, 2007, Martin contacted American Express by telephone to obtain private financial information about Frederick's credit card account. Martin was not at that time a cardholder on

---

[1] Because several of the parties share the same last name, we refer to them by their first names for the sake of clarity only. No disrespect is intended.

[2] Frederick and Donna also named American Express Company as a defendant, but it is not a party to this appeal. (We refer to the Scalzo/Ostermiller parties by their first names as the parties have done in their briefing; Frederick, Donna and Martin are siblings; Marty is Martin's adult son.) Another named defendant (Robert Burleson, Martin's personal accountant) was dismissed (after returning his copies of the records at issue).

the account and was not authorized to obtain this information without Frederick's permission. Martin falsely told American Express he was "still" an authorized signer on Frederick's account and said payments being made to the account were still coming out of an account jointly held by Frederick and Martin. In breach of Frederick's cardholder agreement, American Express mailed nearly six years' worth of credit card statements to Martin at his home address, which was not the address on record for Frederick's account.

On December 14, Martin again called American Express to obtain additional statements, claiming he needed them to address tax problems. When he requested that the statements be sent to his address, American Express declined to do so. On December 15, Martin made a third recorded phone call to American Express, again attempting to obtain additional statements on Frederick's account, indicating he needed them to do his books and taxes. On this occasion, he told American Express Frederick was on a trip and unable to request the records himself. When he asked that the statements be sent to his home address, American Express again declined to do so.

As to Martin, Frederick asserted causes of action for invasion of privacy (first), violation of the Gramm-Leach-Bliley Act (15 U.S.C. § 6821 et seq.) (second), violation of the California Financial Information Privacy Act (Fin. Code, § 4050 et seq.) (fourth) and injunctive relief (ninth). In the ninth cause of action for injunctive relief, as to the attorney and accountant defendants as well as Martin, Frederick sought the return of all of his private financial information and an injunction against the use of any such information.[3]

The attorney and accountant defendants filed a special motion to strike the ninth cause of action for injunctive relief (the only cause of action asserted against them), arguing the complaint arose from defendants' furtherance of constitutional rights, that Frederick could not prevail on his claims and that defendants' conduct was absolutely privileged under Civil Code section 47, subdivision (b).[4] (Code Civ. Proc., § 425.16.) According to the declaration of Attorney Robert Tan of Baker & Baker, Martin had filed a complaint (*Scalzo v. Scalzo* (Super. Ct. Orange County, 2008, No. 07CC03159)), attached as an exhibit to Tan's declaration), seeking an accounting relating to funds generated from commercial property held in Martin's, Frederick's and Donna's names (the Scalzo/Ostermiller Properties (SOP)). Information indicated funds of the SOP's business had been used to make payments on an American Express account. Certain American Express statements were obtained in discovery, and Martin obtained other American Express statements. These records related to finding out what happened to funds generated from the properties. Shomaker and Haynie & Company were retained as experts to

---

[3] Two additional causes of action against Martin and Marty relate to ownership of a 1963 Corvette, but these claims are not involved in this appeal.

[4] Martin (and Marty) filed a demurrer to the complaint.

review and analyze SOP books, records and financial statements. Tan also submitted copies of schedule H pages provided by Frederick and Donna's attorneys, along with the trustee's petition for approval of verified accounting in a trust case (entitled "Schedule of American Express payments").

In opposition, Frederick argued defendants' acts were not protected activities under the anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16) as the records were not obtained in connection with any litigation; they were "stolen" by Martin (as Frederick learned in deposing Shomaker) and then disseminated by the attorney defendants "with full knowledge [they had not been] rightfully obtained in the first place." Further, the account number was redacted for the records obtained by subpoena, further evidencing the privacy interests at stake. The matter pending at the time, *Scalzo v. Scalzo*, settled in early 2008, yet defendants refused to return the documents, continuing to use them in yet another matter, *Martin E. and Marion E. Scalzo Trust, dated January 27, 1987* (Super. Ct. Orange County, No. A223823). Martin's attorneys subpoenaed the audio recordings of Martin's three telephone calls seeking Frederick's records, and submitted transcriptions to the trial court in support of Martin's opposition.

After hearing argument on the special motion to strike, the trial court (Hon. Joseph Kalin) granted the attorney and accountant defendants' special motion to strike and awarded attorney fees in the amount of $8,851.50.

In ruling on the demurrer to the complaint, the trial court granted Frederick leave to amend. Frederick filed a first amended complaint, asserting (as to Martin and as relevant here) causes of action for invasion of privacy (first), intentional infliction of emotional distress (second), negligent infliction of emotional distress (third), violation of the California Financial Information Privacy Act (Fin. Code, § 4050 et seq.) (fourth) and injunctive relief (ninth). (The ninth cause of action was asserted against "all defendants," including Marty.)

Martin (and Marty) filed a special motion to strike the first amended complaint, arguing, as the attorney and accountant defendants had argued in their motion, that Frederick's complaint arose out of protected activity, that Frederick could not demonstrate a probability of prevailing on his claims and that Martin's communications were absolutely privileged. Martin submitted a declaration stating he contacted American Express on December 4, 2007, to obtain account records for an account he had with Frederick and Donna, his brother and sister, which was partially used to pay for expenses on rent-producing properties the three siblings co-owned. He claimed the jointly owned property and the accounting for this real property was at issue in the case he filed in Orange County, *Scalzo v. Scalzo, supra*, No. 07CC03159 (the SOP case).

Martin further stated in his declaration that Frederick and Donna were in control of the books and records but would not provide him with financial information for the property. From records produced in discovery in the SOP case, he knew Frederick and Donna were using a jointly held checking account to pay for the American Express account, and he knew rental income generated from the jointly owned real property was being deposited into the joint checking account. He believed he needed the American Express records for his taxes. When he called American Express, Martin said, he believed he had a valid card on the account; he had no idea his account had been cancelled. During his call with American Express, "they" confirmed he did have a card on the account.[5] He did not learn he was not on the account until after he called American Express. A settlement was reached in the SOP case and he "won."

Frederick filed an ex parte application to stay the hearing on the special motion to strike to conduct discovery pursuant to subdivision (g) of Code of Civil Procedure section 425.16. Frederick requested leave to depose Martin and the person most knowledgeable at American Express. At that time, the trial court stated: "[Y]ou may be entitled to that discovery[,] but I think it's better for the court to consider that at the time when I hear the SLAPP motion."

Over Frederick's opposition (including a request for the two depositions), the trial court (Hon. Amy Hogue) granted Martin and Marty's special motion to strike and awarded attorney fees in the amount of $9,577.[6]

Frederick appeals from the trial court's orders granting both special motions to strike and awarding attorney fees.

## DISCUSSION

Section 425.16 of the Code of Civil Procedure[7] provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."[8] (§ 425.16, subd. (b)(1).) In ruling on a defendant's

---

[5] In fact, during that call, American Express confirmed that he did not have a card on that account, as the card he was referring to was an old card, which had been cancelled. There is also an indication that he had already been denied access to the information in three earlier calls.

[6] The claims involving the Corvette remain.

[7] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

[8] Under the statute an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial

motion under section 425.16, the trial court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute.[9] (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.[10] Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises, supra,* 29 Cal.4th at p. 67.) " 'The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue.' " (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928 [116 Cal.Rptr.2d 187].)

proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

[9] As to this threshold issue, the moving party's burden is to show "the challenged cause of action arises from protected activity." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [39 Cal.Rptr.3d 516, 128 P.3d 713]; see *City of Los Angeles v. Animal Defense League* (2006) 135 Cal.App.4th 606, 616, fn. 10 [37 Cal.Rptr.3d 632].) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e) . . . .' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695], italics omitted.)

[10] Once the defendant establishes the anti-SLAPP statute applies, the burden shifts to the plaintiff to demonstrate a "probability" of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon Enterprises.*) "[T]he plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733], italics omitted; see *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1056.)

We review the trial court's rulings on an anti-SLAPP motion independently under a de novo standard of review. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*); *Rusheen v. Cohen, supra*, 37 Cal.4th at p. 1055 (*Rusheen*).)

According to Frederick, the trial court erred in concluding Martin had met his threshold burden in demonstrating the challenged causes of action arose from protected activity.

■ As we stated in *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305 [106 Cal.Rptr.2d 906], "The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law. If this were the case then the inquiry as to whether the plaintiff has established a probability of success would be superfluous." Only in the "narrow circumstance" in which the defendant "concedes, or the evidence conclusively establishes," that the defendant's assertedly protected conduct was illegal as a matter of law is the defendant precluded from using section 425.16 to strike the plaintiff's action. (*Flatley, supra*, 39 Cal.4th at pp. 316, 320.) To satisfy the initial burden on a special motion to strike, the moving party must demonstrate the conduct that forms the basis for the challenged causes of action was an act in furtherance of the right of petition or free speech. (*City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 78; *Equilon Enterprises, supra*, 29 Cal.4th at p. 67; see *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 460 [125 Cal.Rptr.2d 534] [Where "the legality of [a defendant's] exercise of a constitutionally protected right [is] in dispute in the action, the threshold element in a section 425.16 inquiry has been established."].) We need not determine, however, whether Martin has met his initial burden on this threshold issue, as, even assuming Martin has done so, our evaluation of the showing of illegality in considering the second prong demonstrates that the motion was not properly granted.

■ As our Supreme Court noted in *Flatley, supra*, 39 Cal.4th at page 319, " 'any "claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise and support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case." ' " "[W]e emphasize that the question of whether the defendant's underlying conduct was illegal as a matter of law is preliminary, and unrelated to the second prong question of whether the plaintiff has demonstrated a probability of prevailing, and the showing required to establish conduct illegal as a matter of law—either through defendant's concession or by uncontroverted and conclusive evidence—is not the same showing as the plaintiff's second prong showing of probability of prevailing." (*Id.* at p. 320.)

Thus, turning to the question of Frederick's probability of prevailing on his claims, the evidence he presented is sufficient to meet this burden. The claim that the litigation privilege precludes success on the merits cannot stand. (Civ. Code, § 47, subd. (b).)

■ "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].) The requirement that the statement be made "in" a judicial proceeding does not limit the litigation privilege to statements made at trial or to evidence offered in open court. (*Rusheen, supra*, 37 Cal.4th at p. 1057; *Albertson v. Raboff* (1956) 46 Cal.2d 375, 381 [295 P.2d 405].) Rather, the privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (*Silberg, supra*, 50 Cal.3d at p. 212.) As a result, " 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability . . .' " by the privilege. (*Rusheen, supra*, 37 Cal.4th at p. 1057.)

■ However, the privilege does not protect illegal conduct that results in damages unrelated to the use of the fruits of that conduct in litigation. Where, as here, damages separate from the litigation are demonstrated, the alleged wrongful, potentially criminal activity, is not immunized.

In *Kimmel v. Goland* (1990) 51 Cal.3d 202 [271 Cal.Rptr. 191, 793 P.2d 524], the Supreme Court addressed such an assertion of the privilege. There, to obtain information for litigation, the parties had secretly tape-recorded conversations, allegedly violating a criminal statute protecting against invasion of privacy. The court rejected the application of the privilege because the damages arose not from the publication of the statements in the litigation, but from their recording. (*Id.* at p. 212.)

The court continued: "Finally, we note that the result urged by plaintiffs, an extension of section 47(2) to unlawful conduct undertaken to obtain evidence in anticipation of litigation, would lead to unacceptable consequences. Suppose . . . a prospective defendant kept important documents at home. If a prospective plaintiff, in anticipation of litigation, burglarized defendant's premises in order to obtain evidence, plaintiffs here would apparently apply the privilege to protect the criminal conduct. Such an extension of section 47(2) is untenable. The instant case and the example are comparable in that both involve violation of a penal statute, and in both cases the offending party

seeks immunity from civil liability. In both, the claim must fail." (*Kimmel v. Goland*, 51 Cal.3d at p. 212; see also *Ribas v. Clark* (1985) 38 Cal.3d 355, 365 [212 Cal.Rptr. 143, 696 P.2d 637] [violation of eavesdropping laws to obtain evidence for litigation not immunized where damage arises from violation, not use in litigation].)

In light of this authority, Martin's attempt to assert the privilege must fail. Martin's challenge rests on two assumptions: first that his purpose in obtaining the documents from American Express was to obtain information for the litigation between the parties; and second that the damages asserted rested on the use of the documents in that litigation. Neither provides a basis for the absolute bar he asserts.

First, Martin told both American Express, and the court below, that he needed to obtain the documents to prepare his taxes. That is not a purpose that has any relation to judicial proceedings. When he did need documents for the litigation, moreover, he successfully used the subpoena process, which permits parties to obtain necessary records, while providing protection to the party whose records are involved in the form of notice and the ability to obtain protective orders concerning the information produced and its use.

Second, Frederick asserted damages arising from the act itself, as well as damages unrelated to the use of the documents in litigation, namely identity theft and damage to credit caused by the use and dissemination of the documents outside of litigation.

Even if the asserted illegality were not clear on its face, that fact would allow the motion to survive the required analysis under the first prong, but would not mean that the method of obtaining the information is irrelevant to the second-prong analysis. Although Frederick was inhibited in his showing by the refusal to grant the requested discovery, the record he was able to establish demonstrated that, at least from the first recorded call on, Martin knew he was not a current cardholder, and thus was not entitled to the information he sought. As to the earlier calls, the current record does not indicate that they were transcribed, but it appears to be a fair inference from the record before us that Martin had been unsuccessful in obtaining the information in those prior attempts, and thus had knowledge that he might not, in fact, be a cardholder entitled to the information he sought. In light of these facts, Frederick's evidentiary support is sufficient to establish the requisite prima facie showing, and Martin has failed to establish as a matter of law that Frederick cannot succeed on the merits in showing that the claimed illegal acts occurred and caused damage unrelated to the underlying litigation. (*Wilson v. Parker, Covert & Chidester, supra*, 28 Cal.4th 811, 821.) The motion should therefore have been denied, and we accordingly reverse.

In light of this determination, the award of attorney fees to Martin is also reversed. The claim of error concerning the discovery request is moot.

■ As to the claim for injunctive relief asserted against Martin, and the attorneys and accountants, Frederick has made no claim, or factual showing, that they obtained the documents in violation of the law, or used the documents in any manner outside of the litigation context. As such, they demonstrated that the privilege of section 47, subdivision (b) applies. "*Silberg* leaves no room for doubt: For policy reasons, even an act committed fraudulently or with malice is privileged under section 47, subdivision (b)." (*O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 135 [100 Cal.Rptr.2d 602], citing *Silberg v. Anderson, supra*, 50 Cal.3d at pp. 216–218.) The assertion that Martin's conduct was "fraudulent" or illegal does not change the result. As to that motion, there is no error.

## DISPOSITION

The judgment as to Martin R. Scalzo is reversed and the matter remanded for further proceedings consistent with this opinion. As to the remaining respondents the judgment is affirmed. Appellant is to recover his costs on appeal as to Martin R. Scalzo. All other respondents are to recover their costs on appeal from appellant.

Woods, Acting P. J., and Jackson, J., concurred.

A petition for a rehearing was denied June 14, 2010.