Filed 1/23/14  First So. Capital Development v. Sheet Metal Workers' Pension Plan etc. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| FIRST SOUTHERN CAPITAL DEVELOPMENT CORP., | B239824 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YC065531) |
| v. | |
| SHEET METAL WORKERS' PENSION PLAN OF SOUTHERN CALIFORNIA, ARIZONA AND NEVADA et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Cary Nishimoto, Judge.  Affirmed.

Gilbert & Sackman, Robert A. Cantore, Stephanie J. Joseph; Willis DePasquale, Larry N. Willis, and Stephanie N. Rachel, for Defendants and Appellants.

Law Office of Mark Mazda and Mark Mazda for Plaintiff and Respondent.

_____

First Southern Capital Development Corporation (First Southern) sued The Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada (Pension Plan) for breach of contract, wrongful eviction and interference with prospective economic relations, as well as several other claims. The trial court denied Pension Plan's special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16,[1] concluding First Southern had met its burden of demonstrating a probability of prevailing on the merits. Because First Southern's claims do not arise from protected activity within the meaning of section 425.16, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Lease, Asset Purchase Agreement and Efforts To Ascertain First Southern's Creditworthiness*

Aviation Mortgage Partners, Inc., a retail mortgage originating firm, entered into a five-year lease for space in a Manhattan Beach building owned by Pension Plan commencing July 1, 2009. The lease was guaranteed by Aviation Mortgage's shareholders, Richard Thomas and Denise Thomas (husband and wife). Richard was the company's president, and Denise the senior vice president.[2] The lease provided it could not be assigned without the prior written consent of the landlord, "which consent shall not be unreasonably withheld or delayed."[3] In the event of a merger or sale of assets, however, the lease could be assigned if certain requirements were met including the provision of "detailed financial information (including references) regarding the creditworthiness and financial condition of the proposed assignee . . . and such other

---

[1]    Statutory references are to the Code of Civil Procedure.

[2]    Because the Thomases share a surname, we refer to them by their first names for convenience and clarity. (See *Callahan v. Gibson, Dunn & Crutcher LLP* (2011) 194 Cal.App.4th 557, 561, fn. 1.)

[3]    The prohibition-of-assignment clause further provided, "Landlord's withholding or delaying approval will be deemed reasonable if it is based on: . . . (x) Landlord's good faith analysis of the prospective assignee[']s, sublessee's or other transferee's credit, character and business or professional standing."

2

information and documentation as the Landlord may require" and execution of new lease guarantees or "lease guarantor estoppel certificates, affirmations and agreements."

In the first quarter of 2010 First Southern agreed to purchase Aviation Mortgage's assets, including the office lease. First Southern and Aviation Mortgage signed an asset purchase agreement in April 2010, and First Southern thereafter occupied the Manhattan Beach premises and made the lease payments. In a May 13, 2010 email Richard informed Melanie Shepherd, the building manager, he was in the "process[] of an 'Asset Sale' of Aviation Mortgage" to First Southern, but would remain the company's president. The email stated, "In my agreement with [First Southern], they have agreed to assume our lease. Please forward a list of any documents or paperwork you may need to have them assume the lease."

Notwithstanding Richard's email, the asset sale was in jeopardy. Correspondence between Richard and First Southern executives in mid-May 2010 described the parties' disagreement whether the Thomases had been fully compensated pursuant to the terms of the asset purchase agreement. Around the same time First Southern requested that Shepherd communicate directly with it to obtain its financial information, but Shepherd refused.[4] On June 7, 2010 Shepherd requested from Richard two years of audited financial statements for First Southern and completion of a lease application. According to Shepherd, she received the information in early August 2010 and forwarded it to Chris Sinfield, a leasing broker who had been retained to assist in evaluating First Southern's creditworthiness.

During September and October 2010 Sinfield requested additional information from Richard, including a completed lease application for Michael Jones, the majority stockholder of First Southern. There was confusion among the various individuals involved as to whether and when all the requested information had been transmitted, but by November 10, 2010 Sinfield had reviewed First Southern's 2009 tax return and

---

4      Although Pension Plan was accepting rent payments directly from First Southern, Shepherd explained she had been advised by counsel to communicate only with the lessee, Aviation Mortgage.

concluded Pension Plan should retain a tenant risk assessment firm.  After examining the material provided about First Southern, the risk assessment firm determined additional information was needed because of the "start-up" nature of First Southern and its lack of financial history.  During November and December 2010 the firm sought additional information from First Southern including its business plan, a list of investors (and amounts invested) and key executive biographies.

      2. *The Unraveling of the Asset Purchase Agreement; the Temporary Restraining Order*

In late December 2010 Aviation Mortgage terminated the asset purchase agreement.  On December 30, 2010 Richard advised Shepherd that Aviation Mortgage was withdrawing its request to assign the lease and would be serving First Southern with a notice to vacate the premises.  On December 31, 2010 the Thomases sent First Southern chief financial officer Emile Auguste, Jr. a letter stating there was no binding agreement between First Southern and Aviation Mortgage based on the concerns the Thomases had identified in May 2010.  They requested a time to discuss "an amicable separation."

On the morning of January 20, 2011 Richard requested Shepherd have the office suite entry doors rekeyed and after-hours access cards reprogrammed to deny after-hours access for Auguste and other First Southern personnel.  Later that day the police were called to the premises because of a physical altercation between Richard and Auguste.  On January 21, 2011 First Southern obtained a temporary restraining order against the Thomases enjoining them from, among other things, using the name Aviation Mortgage Partners dba Milestone Mortgage, soliciting First Southern's employees, contacting First Southern's clients and entering the Manhattan Beach office premises.  The Thomases and their agents were also ordered to grant access to First Southern and its employees to the Manhattan Beach premises.

4

### 3. *The Unlawful Detainer Action*

Neither the Thomases nor First Southern paid rent or a pro rata share of building expenses for January or February 2011. After serving notices to quit or pay rent to First Southern and the Thomases, Pension Plan filed an unlawful detainer action on February 15, 2011 naming both First Southern and Aviation Mortgage as defendants. First Southern answered and alleged as affirmative defenses breach of the covenant of quiet enjoyment, breach of the assignment provision of the lease and tortious interference with First Southern's contractual relations with the Thomases causing a breach of contract between First Southern and Aviation Mortgage. Pension Plan moved in limine to disallow First Southern's affirmative defenses.

At the outset of the bench trial on June 13, 2011, the court did not rule directly on the motion in limine but explained unlawful detainer actions are summary in nature, focusing on possession. After Shepherd testified rent had not been paid since December and gave a brief synopsis of the events leading to the rekeying of the premises, the court found the lease had been forfeited and awarded damages and attorney fees in the amount of $120,728.94 in favor of Pension Plan. The court denied First Southern's motion for new trial.

### 4. *The Complaint*

On September 14, 2011 First Southern filed a verified, 88-page complaint with 90 exhibits against Pension Plan, Shepherd and others asserting causes of action for breach of contract, breach of the implied covenant of quiet enjoyment, wrongful eviction, negligence, breach of the implied covenant of good faith and fair dealing, civil conspiracy, negligent and intentional interference with prospective economic relations, interference with contract and business and declaratory relief. After laboriously describing the timeline of events, First Southern summarized its theory of the case: The Thomases had devised a plan to resell Aviation Mortgage to another banking firm after First Southern's substantial investment led to continual sales growth. The delay in approving the lease assignment gave the Thomases the opportunity to execute their plan.

Pension Plan agreed to accommodate the Thomases so it could recapture the space and rent it at a higher rate.

5. *The Trial Court's Orders Denying Pension Plan's Special Motion To Strike*

In January 2012 Pension Plan moved to strike the complaint pursuant to section 425.16 on the ground it arose from its protected activity of prosecuting the unlawful detainer action. In opposition First Southern argued the various causes of action in the complaint arose from Pension Plan's failure to timely approve assignment of the lease and improper actions taken by Shepherd, including rekeying the office premises, not Pension Plan's unlawful detainer action. Relying on the complaint and the exhibits attached to it, First Southern argued it had established a probability it would prevail on the merits.

At the conclusion of the hearing on February 21, 2012, the trial court denied Pension Plan's motion to strike. The court concluded First Southern's causes of action arose from Pension Plan's protected activity of filing an unlawful detainer action. The court explained, although certain allegations in the complaint described unprotected activity, the protected activity (filing a lawsuit) was not merely incidental to the unprotected activity and thus the causes of action were subject to section 425.16. The court found, however, First Southern had "set forth numerous allegations as well as evidence in the form of exhibits in its verified complaint to establish that it may prevail on several different causes of action based on [First Southern's] theory that [Pension Plan] unreasonably withheld consent to the assignment of the lease . . . ."

## DISCUSSION

1. *Section 425.16: The Anti-SLAPP Statute*[5]

Section 425.16, subdivision (b)(1), provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public

---

[5] SLAPP is an acronym for "strategic lawsuit against public participation." (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 8, fn. 1.)

issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Pursuant to subdivision (e), an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In ruling on a motion under section 425.16, the trial court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

   a. *Step one of the two-part test and mixed causes of action*

The moving party's burden on the threshold issue is to show "the challenged cause of action arises from protected activity." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; see *Scalzo v. Baker* (2010) 185 Cal.App.4th 91, 98.) "[T]he statutory phrase 'cause

7

of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e) . . . .'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) "If the defendant does not demonstrate this initial prong, the court should deny the anti-SLAPP motion and need not address the second step." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271.)

When a special motion to strike pursuant to section 425.16 challenges a cause of action that involves both protected and nonprotected activity (sometimes referred to as a "mixed" cause of action), "if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion." (*Scott v. Metabolife Internat.*, *Inc.* (2004) 115 Cal.App.4th 404, 415; accord, *World Financial Group, Inc. v. HBW Ins. & Financial Services*, *Inc.* (2009) 172 Cal.App.4th 1561, 1574.) On the other hand, if the allegations of nonprotected conduct are collateral to the substance of the cause of action, their presence does not prevent the court from applying the statute. As we explained in *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308, "[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'" (Accord, *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 103.)

In applying section 425.16 to mixed causes of action, "it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-

8

SLAPP statute." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188; see *Episcopal Church Cases* (2009) 45 Cal.4th 467, 477-478 ["This dispute [involving ownership of property] and not any protected activity is 'the gravamen or principal thrust' of the action. [Citation.] The additional fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a property dispute into a SLAPP suit."].) That is, "the cause of action is vulnerable to a special motion to strike under the anti-SLAPP statute only if the protected conduct forms a substantial part of the factual basis for the claim." (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1125.)

This analysis does not require an either-or determination or mean the gravamen of a cause of action must be based only on protected activity or on nonprotected activity. Rather, the proper statement of the rule, as articulated in *Haight Ashbury Free Clinics, Inc. v. Happening House Venture*s (2010) 184 Cal.App.4th 1539, 1551, footnote 7 is: "[W]here the defendant shows that the gravamen of a cause of action is based on nonincidental protected activity as well as nonprotected activity, it has satisfied the first prong of the SLAPP analysis." (Accord, *World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc., supra*, 172 Cal.App.4th at p. 1574.)

   b. *Step two*

If the defendant establishes the statute applies, the burden shifts to the plaintiff to demonstrate a "probability" of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.) In deciding the question of potential merit, the trial court properly considers the pleadings and evidentiary submissions of both the plaintiff and the defendant, but may not weigh the credibility or comparative strength of any competing evidence. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713-714; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) The question is whether the plaintiff presented evidence in opposition to the defendant's motion that, if believed by the trier of fact, is sufficient to support a judgment in the plaintiff's favor. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.) Nonetheless, the court should grant the motion "'if,

as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'" (*Taus,* at p. 714; *Wilson,* at p. 821; *Zamos,* at p. 965.)

### c. *Standard of review*

The trial court's rulings on a special motion to strike are subject to our independent or de novo review. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325; accord, *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1055.)

### 2. *The Causes of Action Do Not Arise from Protected Activity*

"There is no question that the prosecution of an unlawful detainer action is indisputably protected activity within the meaning of section 425.16." (*Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1286 (*Clark*).) Nevertheless, consistent with the general principles governing the scope of section 425.16, a complaint initiated after the prosecution of an unlawful detainer action does not compel the conclusion the causes of action arise from protected activity. For example, although an unlawful detainer action may precede the termination of a tenancy, "[t]erminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech." (*Id.* at pp. 1286-1287.) Thus, in *Clark* the court held a tenant's complaint for fraudulent eviction to evade a rent control ordinance did not arise from acts taken by the landlord in furtherance of his right of petition: "[Tenant's] action against [landlord] is not based on [landlord's] filing or service of the notices of intent to evict, it is not based on anything [landlord] said in court or a public proceeding, and it is not based on the fact that [landlord] prosecuted an unlawful detainer action against her. The complaint is based on [landlord's] allegedly unlawful eviction, in that she fraudulently invoked the [rent stabilization ordinance] to evict [tenant] from her rent-controlled apartment as a ruse to provide housing for her daughter, but never installed her daughter in the apartment as required by that ordinance, and also that she failed to pay [tenant's] relocation fee." (*Clark*, at p. 1288; see *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1284 (*1105 Alta Loma Apartments*) [disability discrimination suit following unlawful detainer

10

action did not arise from protected activity; action "was not an attack on any act [landlord] committed during the rental property removal process or during the eviction process itself"]); see also *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 161-162 [tenants' "suit is not based on the [landlords'] filing and serving of a notice [to permanently remove a rental unit from the market] required under the Ellis Act, it is based on the [tenants'] contention '[landlords] are not entitled to invoke or rely upon the Ellis Act to evict plaintiffs from their home'"].)

Like these cases, First Southern's causes of action do not arise from Pension Plan's acts in furtherance of the filing or prosecution of the unlawful detainer action. Rather, they are based on allegations Pension Plan deliberately delayed assignment of the lease to First Southern by requesting additional financial information to purportedly assess its creditworthiness when in actuality it was creating an opportunity for the Thomases to execute their plan to take back Aviation Mortgage. Pension Plan's purported motive for participating in the scheme, which included changing the locks and limiting First Southern's access to the offices, was to recapture the office space and rent it at a higher rate than provided in the Aviation Mortgage lease. Whether or not far-fetched, the causes of action pleaded by First Southern arise from Pension Plan's conduct preceding the unlawful detainer action, not the unlawful detainer action itself. (See *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1183 (*Wallace*) [for purposes of § 425.16, "an alleged act is incidental to a claim, and incidental to any unprotected activity on which the claim is based, only if the act is not alleged to be the basis for liability"].) The unlawful detainer action is incidental to any claims in the lawsuit, which are based on nonprotected activity.

Pension Plan urges us to ignore *Clark* and the other analogous cases—two of which are from this division (*Marlin* and *1105 Alta Loma Apartments*)—and follow the more recent decision in *Wallace*, *supra*, 196 Cal.App.4th 1169. In *Wallace* plaintiffs Cheryl Wallace and John Owen, who leased an apartment together, filed a complaint against their landlord and two neighbors after they were evicted following the neighbors' repeated complaints Wallace's service dog was aggressive. The complaint asserted

11

causes of action including wrongful eviction, retaliatory eviction, breach of the covenant of quiet enjoyment, negligent and intentional infliction of emotional distress and housing discrimination.  (*Wallace*, at p. 1178.)  It alleged the defendants had engaged in a "'systematic campaign of harassment and intimidation against disabled tenants with limited means, designed to force Plaintiffs from their home of four years'" because they had a "'prescribed service dog.'"  (*Ibid.*)

The trial court denied the defendants' section 425.16 motion to strike the causes of action for wrongful eviction and retaliatory eviction on the ground they did not arise from protected activity because the gravamen of the complaint was the pattern of disability discrimination designed to drive the plaintiffs from the home, not the filing of the unlawful detainer action.  (Among other acts alleged as part of the wrongful scheme, the neighbors had reported to animal control that the dog was vicious and dangerous.)  (*Wallace*, *supra*, 196 Cal.App.4th at p. 1180.)  The Court of Appeal reversed.  With respect to wrongful eviction, the court explained the cause of action was predicated on the defendants' attempts to recover possession of the apartment in violation of San Francisco's rent stabilization ordinance, which proscribes recovery unless "landlord's dominant motive pertains to at least one of the occurrences specified in the ordinance. [Citation.]  [¶]  According to the complaint, the acts by which the defendants attempted to recover possession of the apartment . . . at least included, [the landlord's] service of his three-day notice to quit and his filing of the unlawful detainer action.  Indeed this is the wrongdoing alleged in the complaint that is most obviously related to a wrongful eviction claim."  (*Id.* at p. 1182.)

At most *Wallace* is relevant only to First Southern's claim for wrongful eviction.  (See *Wallace*, *supra*, 196 Cal.App.4th at p. 1192 ["anti-SLAPP motion was directed only to the first and thirteenth causes of action, for wrongful eviction and retaliation, and not to . . . causes of action for discrimination"].)  But *Wallace* itself discusses why it is not dispositive of the wrongful eviction cause of action in the case at bar.  In distinguishing *1105 Alta Loma Apartments* and other cases relied upon by the dispossessed tenants, the *Wallace* court explained:  "[U]nlike [*1105 Alta Loma Apartments*] and the other cases on

12

which [tenants] rely, a three-day notice and an unlawful detainer action were the *bases* of [tenant's] first and 13th causes of action. These alleged acts did not merely precede or trigger the lawsuit by [tenants]; nor were these acts alleged solely as evidence of other wrongdoing that was the actual basis of the lawsuit." (*Wallace*, at p. 1194.) Here, First Southern's cause of action for wrongful eviction is apparently predicated on the allegations of an overarching scheme to force First Southern to abandon its right to use and occupy the premise: "By doing the acts described in this complaint, Defendants have wrongfully evicted Plaintiff from the premises." Thus, the wrongful acts alleged were Pension Plan's failure to timely approve the assignment, continual requests for information, rekeying the premises and causing disruption to First Southern's business operations, not the prosecution of the unlawful detainer action. Indeed, the three-day notice to pay or quit was predicated on First Southern's failure to pay rent, which it does not dispute, not any manufactured controversy regarding assignment of the lease or failure to provide requested financial information.

Because none of the causes of action arises from protected activity within the meaning of section 425.16, Pension Plan's special motion to strike was properly denied.

## DISPOSITION

The order is affirmed. First Southern is to recover its costs on appeal.


PERLUSS, P. J.


We concur:



ZELON, J.                              SEGAL, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13