Filed 6/16/14  Tabas v. Boshes CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| JOEL TABAS, as Trustee in Bankruptcy, | B247374 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. SC116169) |
| RALPH BOSHES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge.  Reversed and remanded.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer and David B. Owen, for Defendant and Appellant.

Law Offices of Randall Rich and Randall Rich, for Plaintiff and Respondent, Joel Tabas, trustee of the bankruptcy of Raul Serrano.

_____

Ralph Boshes appeals from an order denying his special motion to strike pursuant to Code of Civil Procedure section 425.16[1] the first cause of action for fraud in a complaint filed by Joel Tabas, Trustee of the Bankruptcy Estate of Raul Serrano, which also alleged causes of action against Boshes for professional negligence and breach of fiduciary duty. We agree with the trial court Tabas's fraud claim arises at least in part from Boshes's protected speech or petitioning activity within the meaning of section 425.16—letters written by Tabas to the Contractor's State Licensing Board (CSLB) on behalf of his client Serrano Const—but disagree Tabas established a reasonable probability of prevailing on that claim. Accordingly, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 2, 2012 Tabas, the trustee of Serrano's bankruptcy estate, filed a complaint and on October 16, 2012 a first amended complaint against attorney Boshes and 20 Doe defendants asserting claims for fraud, professional negligence and breach of fiduciary duty. According to the operative first amended complaint Serrano obtained a California contractor license (No. 409333) in 1981 as a sole proprietor under the name Serrano Construction. In November 1988 Jorge Barajas applied to the CSLB for a contractor license in the name of JB Construction. The application was thereafter revised to request a partnership license in the name of Serrano Const with Barajas and Serrano named in the revised application as partners and Serrano identified as the qualifying partner. Contractor license 571998 was issued to Serrano Const, a general partnership. Tabas alleged Serrano was not aware of, and did not consent to, the application for the partnership license. The pleading alleged Boshes aided Barajas in obtaining the license and thereafter assisted in filing biannual renewals for the Serrano Const license with the CSLB from 1991 through 2009 without Serrano's consent.

The first amended complaint further alleged Barajas obtained an individual California contractor license in 1996. In March 1998 Barajas submitted an application to

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

the CSLB to change the qualifying partner for license number 571998 from Serrano to Barajas. On May 15, 1998 the CSLB returned the application to Barajas requesting additional documentation to effect the change requested. In part the letter stated, "If Raul Domingo Serrano is disassociating from this partnership he must complete a Notice of Disassociation. This license will then be automatically cancelled. [¶] If Jorge Barajas is replacing him only as the qualifier on this license, a letter must be submitted stating he will remain on the license as the general partner."

On July 30, 1998 and August 14, 1998 Boshes wrote the CSLB, advising it that Serrano would remain a general partner in Serrano Const, that Barajas and Serrano had reconstituted their partnership and that earnings and profits from January 1, 1998 on would be distributed 30 percent to Serrano and 70 percent to Barajas. On August 19, 1998 the CSLB sent Serrano Const a letter accepting the application to change the qualifying partner for license number 571998 from Serrano to Barajas. Tabas alleged Serrano had no knowledge of these communications between Boshes and the CSLB and neither authorized nor consented to Boshes's purported representation of him. Rather, the two letters, which contained knowingly false information, were created by Boshes as part of a fraudulent scheme to allow Barajas to continue contracting under license number 571998 notwithstanding the fact that Serrano had retired and was no longer living in California.

On September 25, 2006 John Brandon entered into a home improvement contract with Serrano Const, signed by Barajas. On November 6, 2007 Boshes filed a complaint for breach of contract on behalf of Barajas, "individually and dba Serrano Construction," against Brandon. On December 28, 2007 Brandon filed a cross-complaint against Serrano Const, a partnership, and its general partners Barajas and Serrano. Boshes answered the cross-complaint on behalf of Serrano Const and Barajas. Boshes did not represent Serrano, and no answer was filed on his behalf. On May 23, 2008 a default was entered against Serrano on the cross-complaint. Following a bench trial, on March 12, 2009 a judgment on the cross-complaint was entered against Serrano Const, Barajas and

3

Serrano in the sum of $214,832.00 plus prejudgment interest from January 7, 2009. In early 2011 Brandon initiated a collection action against Serrano in Florida, where he lived. In response to the collection action Serrano filed for Chapter 7 bankruptcy protection. (Barajas has also filed for bankruptcy protection.) Tabas, as trustee of Serrano's bankruptcy estate, identified the claims asserted in the instant lawsuit as an asset of the bankruptcy estate.

In his first cause of action for fraud Tabas alleged Boshes undertook a variety of fraudulent actions to create Serrano Const and to allow it to continue in business despite the fact Serrano had retired to Florida and ceased all construction business in California and, in furtherance of the fraud, Boshes actively concealed important facts from Serrano concerning his and Barajas's activities. Boshes's conduct, the complaint alleged, was a substantial factor in causing harm to Serrano (that is, the judgment against him obtained in the Brandon litigation). In the second cause of action for professional negligence, Tabas alleged Boshes owed a duty to Serrano when he undertook representation of Serrano Const in the Brandon litigation and thereafter breached that duty, in part, by failing to notify Serrano of the complaint or cross-complaint, to answer the cross-complaint on behalf of Serrano or to communicate to Serrano settlement offers made by Brandon. The third cause of action for breach of fiduciary duty alleged Boshes as attorney for Serrano Const in the Brandon litigation owed a fiduciary duty to Serrano as a general partner and breached that duty by failing to properly handle the Brandon litigation on his behalf. Damages for each cause of action were alleged to exceed $600,000. The complaint also prayed for punitive damages for fraud.

On November 6, 2012 Boshes moved pursuant to section 425.16 to strike the fraud cause of action in the first amended complaint. In a declaration submitted in support of the motion Boshes stated he had represented Barajas and Serrano Construction for approximately 20 years. Barajas had at all times advised Boshes that Serrano

4

Construction[2] was a partnership consisting of Barajas and Serrano. Sometime in the early 1990's Barajas advised Boshes that Serrano was retiring from active involvement in Serrano Construction but would remain a partner. Barajas also informed Boshes that Barajas would be the managing partner for Serrano Construction and provided Boshes with a notarized power of attorney, dated November 11, 1992, signed by Serrano allowing Barajas to act on his behalf. (A copy of the power of attorney was attached to the declaration.) According to Boshes, "[a]t no time did I have any reason to know or suspect that the power of attorney provided to me by Mr. Barajas was not valid and legitimate."

The Boshes declaration explained that, after Barajas received the May 15, 1998 letter from CSLB identifying problems with the request to change the qualifying partner in Serrano Const from Serrano to Barajas, Barajas retained him to respond. Pursuant to Barajas's request, Boshes then wrote two letters to the CSLB—the July 30 and August 14, 1998 letters—based on information provided to him by Barajas. Boshes insisted he believed the information he provided the CSLB was true. He acknowledged he had not had any communication with Serrano for at least 10 years and did not consult with him in connection with the CSLB letters.

Tabas filed an opposition to the motion, which included a declaration from Brandon, but not Serrano, and a request for judicial notice that contained portions of deposition testimony by Serrano in the bankruptcy proceedings. Tabas also moved to strike and objected to portions of the declaration by Boshes. Boshes filed a reply memorandum and objections to the evidence submitted in opposition to the motion.

At the hearing on January 10, 2013 the court announced its tentative ruling to deny the motion on the ground Boshes had failed to establish the fraud claim arose from protected conduct within the meaning of section 425.16: "The fraud claim is based upon

---

[2] Although his declaration refers to "Serrano Construction," elsewhere Boshes makes it clear he represented the partnership entity, Serrano Const, not the sole proprietorship, Serrano Construction.

5

concealment not the submission of documents." The court also indicated it had sustained all objections to Tabas's request for judicial notice and overruled all but one objection to Boshes's declaration. The court then heard oral argument and took the matter under submission.

Later the same day the court entered its ruling denying the motion. The court concluded the cause of action for fraud was a mixed cause of action "in that at least one of the underlying alleged acts is protected. . . . [T]he allegations relative to the submission of applications and letters for evaluation by the Contractor's Licensing Board are protected under Code of Civil Procedure, Section 425.16(e)(2), as they qualify as a written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other official proceeding authorized by law." Nonetheless, the court ruled Tabas had established the claim of fraud was legally sufficient and supported by a prima facie showing of facts sufficient to sustain a favorable judgment: "The submission of the applications and letters to the licensing board may be privileged. However, the failure to advise Serrano of the contents of the submissions may support a claim for fraud based upon concealment."

Boshes filed a timely notice of appeal.

## DISCUSSION

1. *Section 425.16: The Anti-SLAPP Statute*[3]

Section 425.16, subdivision (b)(1), provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Pursuant to subdivision (e), an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution

---

[3] SLAPP is an acronym for "strategic lawsuit against public participation." (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 8, fn. 1.)

6

in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In ruling on a motion under section 425.16, the trial court engages in what is now a familiar, two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

a. *Step one and mixed causes of action*

The moving party's burden on the threshold issue is to show "the challenged cause of action arises from protected activity." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; see *Scalzo v. Baker* (2010) 185 Cal.App.4th 91, 98.) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is

7

whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citation.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e) . . . .'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) "If the defendant does not demonstrate this initial prong, the court should deny the anti-SLAPP motion and need not address the second step." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271.)

When a special motion to strike pursuant to section 425.16 challenges a cause of action that involves both protected and nonprotected activity (sometimes referred to as a "mixed" cause of action), "if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion." (*Scott v. Metabolife Internat*., *Inc.* (2004) 115 Cal.App.4th 404, 414; accord, *World Financial Group, Inc. v. HBW Ins. & Financial Services*, *Inc.* (2009) 172 Cal.App.4th 1561, 1574.) On the other hand, if the allegations of nonprotected conduct are collateral to the substance of the cause of action, their presence does not prevent the court from applying the statute. As we explained in *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308, "[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'" (Accord, *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 103.)

In applying section 425.16 to mixed causes of action, "it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188; see *Episcopal Church Cases* (2009) 45 Cal.4th 467, 477-478 ["This dispute

8

[involving ownership of property] and not any protected activity is 'the gravamen or principal thrust' of the action. [Citation.] The additional fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a property dispute into a SLAPP suit."]; see also *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319 ["[t]he 'principal thrust or gravamen' test has been used to determine whether an action fits within the scope of the anti-SLAPP protection provided by section 425.16 when a pleading contains allegations referring to both protected and unprotected activity"].) That is, "the cause of action is vulnerable to a special motion to strike under the anti-SLAPP statute only if the protected conduct forms a substantial part of the factual basis for the claim." (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1125.)

This analysis does not require an either-or determination or mean the gravamen of a cause of action must be based only on protected activity or on nonprotected activity. Rather, the proper statement of the rule, as articulated in *Haight Ashbury Free Clinics, Inc. v. Happening House Venture*s (2010) 184 Cal.App.4th 1539, 1551, footnote 7 is: "[W]here the defendant shows that the gravamen of a cause of action is based on nonincidental protected activity as well as nonprotected activity, it has satisfied the first prong of the SLAPP analysis." (Accord, *World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc., supra*, 172 Cal.App.4th at p. 1574.)

b. *Step two*

If the defendant establishes the statute applies, the burden shifts to the plaintiff to demonstrate a "probability" of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.) In deciding the question of potential merit, the trial court properly considers the pleadings and evidentiary submissions of both the plaintiff and the defendant, but may not weigh the credibility or comparative strength of any competing evidence. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713-714; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) The question is whether the

9

plaintiff presented evidence in opposition to the defendant's motion that, if believed by the trier of fact, is sufficient to support a judgment in the plaintiff's favor. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.) Nonetheless, the court should grant the motion "'if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'" (*Taus,* at p. 714; *Wilson,* at p. 821; *Zamos,* at p. 965.)

        c. *Standard of review*

The trial court's rulings on a special motion to strike are subject to our independent or de novo review. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325; accord, *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1055.)

        2. *The Fraud Cause of Action Arises from Protected Petitioning Activity*

The essence of Tabas's fraud claim is that Boshes, in his communications with the CSLB, affirmatively misrepresented both that Serrano was his client and that Serrano was a partner with Barajas in Serrano Const[4] and then actively concealed those misrepresentations from Serrano, leading to Brandon's judgment against Serrano and Serrano's ultimate declaration of bankruptcy. In his respondent's brief Tabas is emphatic his first cause of action is based on these purported acts of actual fraud, not constructive fraud as Boshes suggested in his opening brief.[5]

---

[4] Boshes's July 30, 1998 letter begins, "This is in response and reply to your letter to my clients, Raul Serrano and Jorge Barajas, dated May 15, 1998, addressed to Serrano Const., returning the application to replace Mr. Barajas from Mr. Serrano as Qualifying Individual on License Number 571998, for correction and resubmittal."

[5] "A fiduciary's failure to share material information with the principal is constructive fraud, a term of art obviating actual fraudulent intent. (Civ. Code, § 1573.)" (*Michel v. Moore & Associates, Inc.* (2007) 156 Cal.App.4th 756, 762.) "'"Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship." [Citation.] [¶] "[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might

10

There can be no question Boshes's July 30, 1998 and August 14, 1998 letters to the CSLB to change the licensing status of Serrano Const, if considered in isolation, constituted protected petitioning activity within section 425.16, subdivision (e)(1) and (2). (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 ["""[t]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action"""]; *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 [same]; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 [same].) Tabas does not dispute this general proposition but argues Boshes failed to meet the threshold requirement for application of section 425.16 on three related grounds: (1) In writing the CSLB Boshes was communicating on behalf of his clients; it was his clients who were exercising their speech or petitioning rights, not Boshes. (2) Boshes purported to be acting as Serrano's counsel; an attorney may not invoke section 425.16 in response to a lawsuit by a former client. (3) The gravamen of the fraud cause of action is not the statements to the CSLB but Boshes's fraud or breach of duties to Serrano in sending the letters to the CSLB. None of these contentions has merit.

Tabas's first argument is simply wrong. An attorney sued for statements made on behalf of a client in a judicial or administrative proceeding or in connection with an issue under review by a court or governmental agency has standing to bring a motion under section 425.16. (*Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1116 ["the statute does not require that a defendant moving to strike under section 425.16 demonstrate that its protected statements or writings were made *on its own behalf* . . . rather than, for example, on behalf of its clients or the general public"]; see *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388 ["[t]he anti-SLAPP statutes protect not only the litigants, but also their attorneys' litigation-related statements"]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 629 ["an

---

affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud.'""" (*Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 415.)

attorney who has been made a defendant in a lawsuit based upon a written or oral statement he or she made on behalf of clients in a judicial proceeding or in connection with an issue under review by a court, may have standing to bring a SLAPP motion"]; see also *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton* (2005) 133 Cal.App.4th 658, 670, fn. 7 (*Peregrine Funding*) [same].)

Tabas's second and third arguments overlap and misstate the emerging case law regarding the applicability of special motions to strike under section 425.16 to lawsuits for professional negligence filed by former clients against attorneys.  To be sure, a number of appellate decisions have held section 425.16 does not apply to "a garden-variety legal malpractice claim by clients against lawyers."  (See *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 158.)  For example, in *Freeman v. Schack* (2007) 154 Cal.App.4th 719, clients sued their former attorney, alleging he had abandoned them to represent adverse interests in their pending class action and in a new competing class action.  The Court of Appeal found the claims did not arise from protected petitioning activity but from the lawyer's "undertaking to represent a party with interests adverse to plaintiffs, in violation of the duty of loyalty he assertedly owed . . . ." (*Id.* at p. 732.)  The *Freeman* court concluded the lawyer's litigation activity was only incidental to the core allegations the attorney had breached his duty of loyalty in failing to properly represent plaintiffs' interests.  (*Ibid*.)

Similarly, in *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, plaintiffs sued their former law firm for breach of its duty of loyalty in representing plaintiffs' opponent in an arbitration proceeding against plaintiffs. The lawsuit was held not to fall within section 425.16, even though the arbitration was a protected activity, because the law firm's breach of its duty of loyalty had occurred when it abandoned the client and agreed to represent the opponent.  The claim did not arise from the firm's conduct at the arbitration.  (*Id*. at p. 1189; see generally *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 705, 706 ["a 'garden-variety' claim for attorney malpractice [citation] is not covered by the anti-SLAPP statute"; "[w]e deal with a claim based on a

12

breach of duty—malpractice—and not with a claim based on direct communications concerning a lawsuit"].)

The rationale for excluding professional negligence lawsuits from the ambit of section 425.16's first prong was explained by the court in *PrediWave Corp. v. Simpson Thacher & Barlett LLP* (2009) 179 Cal.App.4th 1204, "'A malpractice claim focusing on an attorney's incompetent handling of a previous lawsuit does not have the chilling effect on advocacy found in malicious prosecution, libel, and other claims typically covered by the anti-SLAPP statute.  In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so.  Instead of chilling the petitioning activity, the threat of malpractice encourages an attorney to petition competently and zealously.'" (*Id.* at p. 1222, quoting *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1540.)

This rationale is plainly inapplicable to Tabas's fraud claim against Boshes.  The substance of Tabas's complaint is that Boshes should not have petitioned the CSLB on behalf of Serrano at all, not that he failed to do so competently.  Indeed, Tabas's first amended complaint alleged Serrano "neither authorized nor consented to Boshes' purported representation of him," a fact Boshes confirmed in this declaration in support of the special motion to strike, which stated he had been retained by Barajas on behalf of Serrano Const, not Serrano individually, to respond to the CSLB.[6]

---

[6] The limited record presented in support of and opposition to Boshes's special motion to strike provides few details of the actual relationship among Boshes, Barajas and Serrano over the years.  Serrano indicated he had known Boshes since 1989 and apparently Boshes represented Serrano in several lawsuits.  Serrano stated he has had no contact with Boshes after 1996, and, as discussed, both men vigorously deny Boshes was representing Serrano in 1998 when he corresponded with the CSLB on behalf of Serrano Const.  Serrano and Barajas had some business dealing with each other in the early 1990's, but Serrano insisted he was never a partner with Barajas in a construction business (or with anyone else, for that matter).  In a debtor examination in connection with enforcement of Brandon's judgment, in contrast, Barajas testified Serrano was a limited partner in his construction business, Serrano Const.

Moreover, contrary to Tabas's attempt to create a bright-line rule that governs the case at bar, other cases recognize the applicability of section 425.16 to lawsuits between lawyer and former client. In *Peregrine Funding, supra*, 133 Cal.App.4th 658 investors who had lost millions of dollars in a large Ponzi scheme and the bankruptcy trustee representing entities that were used to perpetrate the scheme sued a law firm for legal malpractice and breach of fiduciary duty, claiming its negligence and affirmative misconduct had aided the perpetrators of the scheme avoid detection and prosecution by securities regulators. The court held section 425.16 applied, reasoning plaintiffs' claims were based in significant part on the law firm's simultaneously representation of a "co-client" in Securities and Exchange Commission proceedings—protected petitioning activity. In the court's view this differentiated the matter from cases in which attorney's communicative action was merely evidence of liability rather than the basis of the liability. (See *Peregrine Funding*, at p. 673.) Here, Tabas's fraud claim is based in significant part on Boshes's representation of Serrano Const in petitioning the CSLB, not solely on any claimed incompetence in representing Serrano individually (who, as noted, has expressly disavowed any attorney-client relationship existed with Boshes in connection with the CSLB application).

Perhaps even more directly on point, in *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, our colleagues in Division Three of this court distinguished the garden variety legal malpractice cases relied upon by Tabas and held section 425.16 applicable to a claim a former in-house counsel had violated professional duties he owed to his former corporate clients by making statements to the Insurance Commissioner as liquidator of a related company that led to the initiation of an adversary

---

Although Serrano and Boshes agree Boshes was not representing Serrano in 1998 or at any time thereafter, because Boshes referred to Serrano as his client in the July 30, 1998 letter (although not in the August 14, 1998 letter) to the CSLB, Tabas contends Boshes should be estopped from denying the existence of an attorney-client relationship. Resolution of that issue is not necessary to our analysis of Boshes's special motion to strike the fraud cause of action.

action against his former clients in the liquidation proceedings: "These cases are distinguishable because the gravamen of FRC's counts for breach of confidence, breach of fiduciary duty, and equitable indemnity is that Faigin violated his professional duties owed to his former clients by making the statements to the Commissioner, rather than by some other conduct. Faigin's statements made to the Commissioner are not merely incidental to these cause of action." (*Id*. at p. 1170; see also *Thayer v. Kabateck Brown Kellner LLP, supra,* 207 Cal.App.4th at p. 158 [distinguishing a client's cause of action against attorney based on acts on behalf of the client and a cause of action based on attorney's statements or conduct on behalf of different clients; the former class of claims "may not be within the ambit of SLAPP"; the other kinds of actions "are"].)

Although Tabas has alleged Boshes improperly concealed from Serrano his July 30 and August 14, 1998 letters to the CSLB, it is the allegedly false content of the letters themselves—the petitioning activity on behalf of Serrano Const—that is the gravamen or principal thrust of the lawsuit. Thus, paragraph 10 of the first amended complaint alleged, "these two letters contained knowingly false information and were created by Boshes as part of a fraud whose purpose was to allow Barajas to continue contracting under license number 571998 . . . ." And paragraph 20 alleged "Serrano was harmed by Boshes' actions . . . . These fraudulent acts include but are not limited to: aiding Barajas in obtaining CSLB partnership license number 571998[7] . . . ; fabricating the content of the July 30, 1998 letter to the CSLB stating that Serrano would remain a general partner when he had not had contact with Serrano for two years; fabricating the August 14, 1998 letter to the CSLB stating that on or about March 1, 1998, Barajas and Serrano agreed to reconstitute the partnership . . . ." Moreover, according to Tabas, it was the creation and continuation of Serrano Const, and in particular the July 30, 1998 and August 14, 1998 letters from Boshes to the CSLB confirming Serrano's ongoing role

---

[7]      Although the first amended complaint alleged Boshes had assisted Barajas in the original license application for Serrano Const, no evidence was presented to support that allegation in the opposition to Boshes's special motion to strike.

15

as a partner in the construction business, that directly led to his being named a cross-defendant in the Brandon litigation, the entry of judgment against him in that lawsuit and his eventual bankruptcy when faced with Brandon's collection efforts.

Even acknowledging Tabas has also alleged the purported concealment "was a substantial factor in causing Serrano's harm" and any such concealment or failure to disclose may well be nonprotected activity, the allegations of protected petitioning activity are far from collateral to the fraud cause of action; to the contrary, they form a substantial part of the factual basis for the claim. Accordingly, the trial court correctly ruled Boshes satisfied the first prong of the section 425.16 analysis. (See *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures, supra*, 184 Cal.App.4th at p. 1551, fn. 7; *World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc., supra*, 172 Cal.App.4th at p. 1574.)

3. *Tabas Has Failed To Establish a Probability of Prevailing on the Fraud Claim*

Because Boshes made a threshold showing that section 425.16 applies to Tabas's fraud cause of action, it became Tabas's burden to "'demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741.) "The plaintiff may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence." (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1017; accord, *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 376.) Tabas's limited evidentiary presentation in the trial court failed to make the required showing.[8]

---

[8] Although the trial court's tentative ruling was to sustain most of Boshes's objections to Tabas's evidentiary presentation and to overrule all but one of Tabas's objections to Boshes's declaration, its order denying the special motion to strike did not include any ruling on the parties' objections. Accordingly, we have reviewed all of the material presented with the special motion to strike and the opposition to the motion.

16

According to Tabas's evidence, Serrano did not retain Boshes in connection with Barajas's effort to replace Serrano as the qualifying partner for Serrano Const and was unaware of the two letters Boshes wrote to the CSLB concerning Serrano Const until Brandon's efforts to enforce the judgment entered on his cross-complaint in litigation initiated by Boshes on behalf of Barajas "individually and dba Serrano Construction." Serrano was not a partner in Serrano Const (at least for purposes of the fraud cause of action) and did not sign the power of attorney authorizing Barajas to act on his behalf. (Barajas, in contrast, in deposition testimony attached to Tabas's request for judicial notice in opposition to the special motion to strike, insisted Serrano gave him the power of attorney.) Serrano also testified Boshes did not contact him or disclose anything with respect to Serrano Const or the CSLB letters during the relevant time period.

Boshes, on the other hand, presented evidence—uncontradicted by Tabas—that he was retained in 1998 by Barajas to respond on behalf of Serrano Const to the CSLB's May 15, 1998 inquiry. As instructed by his client Serrano Const, and in reliance on the notarized power of attorney, which designated Barajas as Serrano's attorney-in-fact, Boshes wrote the CSLB. The information in the two letters was provided by Barajas to Boshes, and Boshes believed it all to be true. Boshes supplied copies of his letters to Serrano Const, and all the information provided by Boshes to the CSLB was a matter of public record and could be accessed at the CSLB website.

Contending the power of attorney was facially defective (that is, ineffective for reasons other than Serrano's claim he did not sign it), Tabas asserts Boshes's reliance on the document, together with his admitted lack of contact with Serrano in 1998 when corresponding with the CSLB, is sufficient evidence of an intent to defraud for the purpose of establishing a probability of prevailing on the fraud claim. The premise for

Both Tabas and Boshes have moved to supplement the appellant record with material contained in motions to augment, for judicial notice and to take new evidence on appeal. To the extent we have not previously ruled on those motions, they are denied.

17

this argument—Tabas's challenge to the validity of the power of attorney—rests on a fundamental misreading of the instrument.

According to Tabas, the power of attorney would only become effective on Serrano's incapacity.[9] Tabas fails to recognize the document granted Barajas a general power of attorney that included an optional durable power of attorney. The general (or nondurable) power of attorney was effective immediately, and the attorney-in-fact's powers would normally be terminated by the principal's incapacity (see Prob. Code, §§ 4152, subd. (a)(7), 4155, subd. (a)). The optional durable power of attorney, set forth in paragraph (h), became effective upon the principal's (Serrano's) incapacity but did not otherwise impair the powers granted. As recited in paragraph (g), "This Power of Attorney shall not be affected by subsequent incapacity of the principal (and shall remain effective for a period of one year[] after the disability or incapacity occurs)." Under Probate Code section 4303, because the power of attorney was presented to Boshes by the attorney-in-fact designated in the instrument and the power of attorney appeared valid on its face and included a notary public's certificate of acknowledgment, Boshes's good faith reliance on the power of attorney immunized him from liability for claims brought by, or in the name of, Serrano.[10] Tabas's evidentiary presentation did nothing to

---

[9] Tabas also contends, in the peculiar, inconsistent pleading-in-the-alternative style that characterizes his lawsuit, because Serrano was not actually a partner in Serrano Const and the power of attorney was applicable by its terms only to "mechanics liens or other interests belong[ing] to me," the power of attorney did not authorize Barajas to act as Serrano's attorney-in-fact with respect to Serrano Const. (In the third cause of action for breach of fiduciary duty, Tabas pleaded Boshes, as counsel for Serrano Const, owed fiduciary duties to Serrano as a partner of Serrano Const.) Putting aside how Boshes could have a duty to disclose information to Serrano if he was neither his client nor a partner in Serrano Const, a question we need not reach (see fn. 6, above), for purposes of establishing an intent to defraud, the issue is Boshes's good faith belief, not the truth of the underlying facts.

[10] Probate Code section 4303 provides, "(a) A third person who acts in good faith reliance on a power of attorney is not liable to the principal or to any other person for so acting if all of the following requirements are satisfied: [¶] (1) The power of attorney is presented to the third person by the attorney-in-fact designated in the power of attorney.

18

undermine the applicability of this statutory immunity to Serrano's activities at the request of Barajas and on behalf of Serrano Const.

In sum, the evidence before the trial court, considered without weighing credibility or comparative strength, was insufficient to establish a prima facie case that Boshes acted with knowledge of the falsity of his statements to the CSLB (to the extent the claim is based on affirmative misrepresentations) or intentionally concealed or suppressed material information (to the extent the claim is one for concealment) and that, in doing so, he acted with an intent to defraud Serrano—essential elements of his cause of action. (See *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 869 ["In the context of fraud by affirmative false statements, the mental element is commonly stated in terms of intent to induce 'reliance' [Citation.] In the context of fraud by concealment, the more precise formula is probably intent to *induce conduct*— action or inaction—that differs from what the plaintiff would have done if informed of the concealed fact."]; see generally *Robinson Helicopter Co., Inc. v. Dana Corp*. (2004) 34 Cal.4th 979, 990 ["[t]he elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage"]; *Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 850 ["the elements of a cause of action for fraud based on concealment are: '"(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if

_____

[¶] (2) The power of attorney appears on its face to be valid. [¶] (3) The power of attorney includes a notary public's certificate of acknowledgment or is signed by two witnesses. [¶] (b) Nothing in this section is intended to create an implication that a third person is liable for acting in reliance on a power of attorney under circumstances where the requirements of subdivision (a) are not satisfied. Nothing in this section affects any immunity that may otherwise exist apart from this section."

19

he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage""""].)[11] At most, the evidence suggested Boshes may have been less than diligent in relying solely on Barajas's statements and the power of attorney without confirming the information provided with Serrano, not that he had the requisite fraudulent intent. The special motion to strike the first cause of action for fraud should have been granted.

## DISPOSITION

The order denying Boshes's special motion to strike is reversed. The cause is remanded to the trial court with directions to enter a new order granting the motion and to conduct further proceedings to determine the amount of attorney fees and costs to be awarded Boshes as the prevailing party on the motion. Boshes also is to recover his attorney fees and costs on appeal in an amount to be determined by the trial court.

PERLUSS, P. J.

We concur:

ZELON, J.                    SEGAL, J.[*]

---

[11] Because we find the evidence on the element of scienter insufficient, we do not address Boshes's additional arguments that Tabas's fraud claim is barred by the applicable statute of limitations, that Boshes's letters to the CSLB are absolutely privileged under Civil Code section 47, subdivision (b), and that Boshes had no duty to communicate directly with Serrano because his client was Serrano Const, not its individual partners, and he was entitled to deal exclusively with the person he understood to be its managing partner, Barajas, regarding partnership matters.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.